<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |
|---|---|
| MICHAEL A. NAPOLIELLO, <br> ROBERT J. NAPOLIELLO, <br> LAURA M. NAPOLIELLO, <br> RICHARD V. NAPOLIELLO, JR. and <br> JAMES B. NAPOLIELLO, <br><br> Plaintiffs, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 05-5534 (JAG) <br><br> **OPINION** |

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on the motion for summary judgment by Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendant"), pursuant to FED. R. CIV. P. 56. For the reasons set forth below, this Court shall grant Defendant's motion.

**I. <u>BACKGROUND</u>**

On or about November 9, 2000, Richard V. Napoliello, Sr. (the "Insured") applied to MetLife for a life insurance policy by answering questions in the Application For Life Insurance (the "Application"). On March 26, 2001, MetLife issued the Flexible Premium Multifunded Life Insurance Policy Number 201 048 337 UM (the "Policy"), in the amount of $250,000, on the life

of the Insured.[1]  The Insured, who owned the policy, named Michael Napoliello, Laura Napoliello, James Napoliello, Richard Napoliello, Jr., and Robert Napoliello (collectively, the "Plaintiffs") as beneficiaries, in equal shares.

Question 14 in Part A of the Application, and the Insured's responses, stated,

> Within the Past Five Years Has Any Person Proposed for Insurance
> (a) Consulted or been treated by a physician, medical practitioner, counselor, therapist or chiropractor?  No.
> (b) Had an X-ray, ECG or any lab test or study?  No.
> . . .
> (d) Had or been advised to have a surgical operation?  No.

(Application for Life Insurance, attached as Ex. 2 to Aff. of Regina Solomon-Stowe ("Solomon-Stowe Aff.") at 3.)

Question 15(b) in Part A of the Application asked, "Has Any Person Proposed for Insurance Ever Been Treated for . . . [c]ancer, tumor, diabetes or disorder of blood?"  (Id.)  The Insured responded, "Yes," then explained in the space provided below the question that, in 1984, Dr. Vallo Benjamin removed a tumor from his spinal cord.  (Id.)

Question 4 in Part B of the Application asked, "In past 5 years, has any physician, practitioner or health facility examined, advised or treated you?  If Yes, give details below for each instance."  (Id. at 13.)  The Insured answered, "Yes," then stated,

> Dr. Zapcic . . . 7/00           complete physical normal.
> Dr. Glenn Kolansky 1998   removed [f]reckles biopsy - benign.

(Id.)

In Question 5 in Part B of the Application, the Insured was asked,

---

[1]  The Application, by its express terms, and in accordance with the express terms of the Policy, formed a part of the Policy.  (Application for Life Insurance, attached as Ex. 2 to Aff. of Regina Solomon-Stowe ("Solomon-Stowe Aff.") at 7.)

> Have you EVER received treatment, attention, or advice from any
> physician, practitioner or health facility for, or been told by any
> physician, practitioner or health facility that you had
> . . .
> (c) Cancer, tumor or polyp (If Yes, also indicate type and part of body
> affected)?

(Id.)  The Insured responded, "Yes," and explained, again, that, in 1984, Dr. Vallo Benjamin removed "tumor . . . from spinal cord - appendenoma (benign)." (Id. at 13-14.)

Question 6 in Part B of the Application asked, "Have you ever had a surgical operation not revealed above, or gone to a hospital, clinic, dispensary or sanatorium for observation, examination or treatment not revealed above?" (Id. at 13.) The Insured responded, "No." (Id.)

Question 8(a) in Part B of the Application asked, "Have you been aware of any impairment of health not revealed above? (If Yes, give details)" (Id.)  Again, the Insured responded "No." (Id.)

Notably, by signing the Application, the Insured attested,

> I have read this application including any supplements and to the best
> of my knowledge and belief, all statements are true and complete.  I
> also agree that
> – My statements are the basis of any policy issued.
> . . .
> – No information will be deemed to have been given to the Company
> unless it is stated in this application.

(Id. at 7.)

The Policy states that MetLife will not contest the Policy's validity "after it has been in force during the insured's lifetime for 2 years from the Date of Policy," which, in the case of the Insured, is March 26, 2001. (Flexible Premium Multifunded Life Insurance Policy, attached as Ex. 1 to Solomon-Stowe Aff., at 17.)  Therefore, under the terms of the Policy, MetLife could

3

contest the validity of the Policy until March 25, 2003.

The Insured died on December 27, 2001, less than nine months after the Policy was issued, and within the two-year contestable period. (Certificate of Death, attached as Ex. 3 to Solomon-Stowe Aff..) Following the Insured's death, Plaintiffs each submitted separate Individual Life Insurance-Claimant Statements. (Individual Life Insurance-Claimant Statements, attached as Ex. 4 to Solomon-Stowe Aff.)

Since the Insured died within the two-year contestable period, MetLife requested and reviewed the Insured's medical records. (Solomon-Stowe Aff. ¶¶ 14-15.) Medical records from Dr. Glen Kolansky indicated that the Insured received treatment from February 28, 1996 through January 18, 1999, during which time he had several moles surgically excised and sent for lab studies. (Medical records from Dr. Glen Kolansky, attached as Ex. 5 to Solomon-Stowe Aff.) Some of these moles were identified as malignant melanoma. (Id.)

In an internal memorandum dated January 25, 2003, MetLife's Medical Director stated that the Insured's melanoma constituted an "undisclosed medical treatment, attention or history" and that, based on this information, the underwriter would not have approved the Policy as issued. (Contestable Death Claim Memo, attached as Ex. 1 to Affidavit of Eileen Kosiner ("Kosiner Aff.").) MetLife's Claims Advisory Unit also issued an internal memorandum, dated March 20, 2003, which stated that it was "[o]kay to proceed with the rejection of the death claim on policy 201 048 337 UM based on the material misrepresentation in the application regarding the insured's unadmitted history of receiving medical attention for melanoma in 2/96." (Memorandum from Sandra Brunkhorst to John Ferencko dated March 20, 2003, attached as Ex. 2 to Kosiner Aff.) The memorandum went on to state,

> The insured's admission in the application of seeing Dr. Glenn Kolansky in 1998 for removal of freckles, the biopsy of which the insured indicated was benign, did not put the Company on notice that the insured had previously seen the physician in 2/96 and the biopsy result at that time was melanoma.

(Id.)

In separate letters, each dated March 24, 2003, MetLife informed Plaintiffs that it denied liability under the Policy, because it had learned that the Insured "was treated by his physician on several occasions from February 23, 1996 to January 18, 1999 for a condition which is serious from an underwriting standpoint." (Letters from Mary Stewart, Director of MetLife Claims, to Plaintiffs, dated March 24, 2003, attached as Ex. 6 to Solomon-Stowe Aff.) MetLife elaborated by explaining that, if the Insured "had disclosed his treatment for this condition . . . his application would not have been issued as applied for." (Id.)

Plaintiffs filed a Complaint against Defendant on September 26, 2005 in the Superior Court of New Jersey, Law Division, Essex County, seeking an award for the specified amount of the Policy. This action was later removed to this Court on November 22, 2005.

Defendant filed a motion for summary judgment on October 30, 2007, arguing that the Insured's failure to disclose his treatment for melanoma constitutes the omission of a material fact from the Application, rendering the Policy null and void. According to Plaintiffs, however, MetLife was aware that the Insured was treated for melanoma by Dr. Albert Kolarsick in 1983 because the Insured provided this information in connection with MetLife's issuance of a previous insurance policy to the Insured, Policy Number 924 906 433 E1. ((Memorandum from Sandra Brunkhorst to John Ferencko dated March 20, 2003, attached as Ex. A to Affidavit of Jeffrey Kantowitz and as Ex. 2 to Kosiner Aff.)

5

## II.  STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'"  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original)  (internal citations omitted).)  Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."  Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006).

### III.  ANALYSIS

There exists no genuine issue of material fact regarding whether Defendant knew of the Insured's melanoma condition, as neither party offers evidence showing that the Insured expressly referenced this diagnosis on the Application.  Rather, Defendant's summary judgment motion centers on whether the omission from the Application of the Insured's melanoma renders the Policy void.

"A court may order rescission of a life insurance policy for equitable fraud even after the death of the insured."  Ledley v. William Penn Life Ins. Co., 651 A.2d 92, 95 (N.J. 1995).  A false statement made by an insured in his application for a life insurance policy may bar a beneficiary from recovering under the policy's terms if "such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."  N.J. STAT. ANN. §

17B:24-3(d).  In order to rescind the policy, "an insurer need not show that the insured actually intended to deceive."  Ledley, 651 A.2d at 95; Mass. Mut. Life Ins. Co. v. Manzo, 584 A.2d 190, 194-95 (N.J. 1991).  "Even an innocent misrepresentation can constitute equitable fraud justifying rescission."  Ledley, 651 A.2d at 95.

To determine whether equitable fraud exists, courts must first examine whether the statement at issue responds to an objective or a subjective question on the application.  Id. at 96.  While objective questions request information within the applicant's knowledge, subjective questions "seek to probe the applicant's state of mind."  Id.  Typically, courts are more lenient when determining whether an applicant's response to a subjective question constitutes a misrepresentation, particularly "if 'the question is directed toward probing the knowledge of the applicant and determining the state of his mind and . . . the answer is a correct statement of the applicant's knowledge and belief . . . .'"  Id. (citing Ettelson v. Metro. Life Ins. Co., 164 F.2d 660, 665 (3d Cir. 1947)).

With the exception of Question 8(a) in Part B of the Application, all of the Application questions highlighted in the Statement of Facts are objective questions, to which the Insured provided false or incomplete answers.  The Insured's surgical removal of moles, and his attendant diagnosis of melanoma, contradict the responses to Question 14 in Part A of the Application, and Questions 4 and 6 in Part B of the Application, in which the Insured stated that he has not been treated by a physician in the past five years and has not been advised to have a surgical operation.  The Insured's treatment for malignant melanoma also conflicts with his answer to Question 15(b) in Part A of the Application, as well as his answer to Question 5 in Part B of the Application, which both state that the Insured has not been treated for cancer.

8

In contrast, Question 8(a) in Part B of the Application inquires about the Insured's subjective understanding of his health, specifically, whether he was *aware* of any health impairment that has not been otherwise revealed in the Application.  Nevertheless, the Insured's response to this question, "No," also constitutes a misrepresentation of fact.  The Insured was not only aware of his diagnosis of melanoma, he received treatment for it.

Once the court finds that a misrepresentation has been made, it must then analyze whether the false statement(s) "materially affected either the acceptance of the risk or the hazard assumed by the insurer."  See N.J. STAT. ANN. § 17B:24-3(d).  A misrepresentation is material if it "naturally and reasonably influenced the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium."  Ledley, 651 A.2d at 97 (citing Manzo, 584 A.2d at 190).

Defendant asserts, and Plaintiffs do not deny, that the Insured failed to state expressly in the Application that he received treatment for melanoma.  Defendant points to internal memoranda which show that it would not have issued the Policy to the Insured had he disclosed his melanoma treatments in the Application.  The Insured's failure to disclose his melanoma diagnosis and treatments in the Application constitute material misrepresentations.

Plaintiffs argue that MetLife had a duty to perform an independent investigation of the Insured's medical records prior to issuing the Policy, because Dr. Kolansky, who treated the Insured for melanoma, was expressly named in the Application.  However, "an insurer's duty to investigate further arises 'only when the independent investigation . . . discloses sufficient facts to seriously impair the value' of the application."  Id. (citing Gallagher v. New Eng. Mut. Life Ins. Co. of Boston, 114 A.2d 857, 862 (N.J. 1955)).  In fact,

9

> [t]he mere fact that an insurer makes an investigation does not absolve the applicant from speaking the truth nor lessen the right of the insurer to rely upon his statements, unless the investigation discloses facts sufficient to expose the falsity of the representations of the applicant or which are of such a nature as to place upon the insurer the duty of further inquiry.

Ledley, 651 A.2d at 97 (citing John Hancock Mut. Life Ins. Co. of Boston v. Cronin, 51 A.2d 2, 5 (N.J. 1946)).  In order to impose upon MetLife an obligation to review the Insured's medical records before issuing an insurance policy, Plaintiffs must point to information held by MetLife that should have raised doubts regarding the veracity of the Application.

Plaintiffs contend that the Insured's treatment for melanoma was disclosed in connection with his application for the previous policy, and that MetLife therefore had knowledge of conflicting information which triggered its duty to investigate independently the Insured's medical history.  In response, Defendant argues that it was under no duty to examine any previous applications submitted by the Insured prior to issuing the Policy.  To reinforce this argument, Defendant points to the clause in the Application which states, "No information will be deemed to have been given to the Company unless it is stated in this application."  (Solomon-Stowe Aff. Ex. 2 at 7.)

This Court adopts Defendant's argument for two reasons.  First, Defendant had no duty to review its files to identify and assess information included in prior insurance applications.  In Gasaway v. Northwestern Mutual Life Insurance Company, the District Court of Hawaii found that, under state law, an insurer had no obligation to review applications previously submitted by an insured which would have highlighted the insured's misrepresentations.  The court explained that "[t]he fact that [the insurer] had the capacity to discover the truth on its own does not cure

10

the misrepresentations made on [the insured's] application."  820 F. Supp. 1241, 1246 (D. Haw. 1993).  This Court is likewise persuaded that Defendant is not obligated to review prior insurance applications submitted by the Insurer, in order to detect lies or omissions apparent in his most recent Application.

Second, and perhaps more significant, express language in the Application prevented Defendant from looking outside the Application to evaluate the sufficiency of the Application. By requiring the Insured to attest that "[n]o information will be deemed to have been given to the Company unless it is stated in this application," MetLife dispelled any assumption that the Application would be reviewed in conjunction with prior insurance applications submitted by the Insured.  The New Jersey Supreme Court relied on a similar clause in an insurance policy in Ledley when holding that an insurer did not have a duty to investigate independently the veracity of an insured's representations.[2]  Ledley, 651 A.2d at 97.  Defendant is not expected to do that which he has expressed unequivocally to the Insured that he would not do.

---

[2] The court noted that the policy included a clause which "precludes imputing to [the insurer] any information . . . not included in the application."  Id.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment shall be granted.  By omitting any reference to his treatment for melanoma from 1996 through 1999, the Insured made material misrepresentations in the Application.  As a result, Defendant's decision to rescind the Policy shall not be disturbed.  Defendant is not obligated to provide any payments to Plaintiffs.


      S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: June 19, 2008